# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**KENYATTA JACKSON,**

  **Petitioner,**

            **CASE NO. 2:08-CV-989**
            **CRIM. NO. 2:05-CR-225**
**v.**             **JUDGE FROST**
            **MAGISTRATE JUDGE ABEL**

**UNITED STATES OF AMERICA,**

  **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant motion, respondent's return of writ, petitioner's response, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** Petitioner's request for an evidentiary hearing is **DENIED**.

## FACTS and PROCEDURAL HISTORY

Petitioner's underlying criminal convictions on possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. §§841(a)(1), (b)(1)(B)(iii), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c), are the result of his February 1, 2006, negotiated guilty plea. Doc. Nos. 36, 37. The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> Jackson went to the Westside Child Daycare Center and handed a box to a school employee for safekeeping. The employee opened the box, saw a gun inside, closed it, and

called the Columbus police. Jackson saw the officers arrive and ran to the basement to hide. He hid a bag of crack cocaine and his gun there before attempting to leave the school. The police caught Jackson, arrested him, and placed him in a police cruiser. They searched the school and found the loaded gun and crack in the daycare basement.

While in the back of the police cruiser, Officer Christine Nemchev told Jackson, who had yet to be given his *Miranda* warnings, that he might as well come clean. Jackson told the officer that the school employee had no right to look in the box he gave her. Two hours later, the Columbus Police Department's (CPD) liaison to the ATF, Brett Slaughter, and an ATF special agent, Beth Dallas, interviewed Jackson at CPD headquarters. They first advised him of his *Miranda* rights and, after he waived them, ensured that the waiver was knowing and voluntary. Jackson confessed to Dallas and Slaughter and indicated his desire to cooperate with law enforcement. After he was indicted, Jackson moved to suppress the statements in the cruiser and his confession to Dallas and Slaughter. The district court granted his motion with respect to the cruiser statements and denied it with respect to his confession.

Jackson initially pleaded not guilty, but later accepted a charge bargain. He entered an unconditional plea to possessing crack with intent to distribute and possessing the gun in furtherance of a drug trafficking crime. After Jackson pleaded guilty, his counsel moved to withdraw, and he was appointed new counsel. Before sentencing, he moved to withdraw his guilty plea. The district court denied the motion, finding that Jackson had failed to establish a fair and just reason under Rule 11(d)(2)(B), and sentenced him to 120 months.

*United States v. Jackson*, 238 Fed.Appx. 45, unpublished, 2007 WL 1732901 (6th Cir. June 14, 2007). Petitioner filed a timely appeal, in which he asserted that the District Court erred in denying his motion to suppress evidence and his motion to withdraw his guilty plea. *See id.* On June 18, 2007, the United States Court of Appeals affirmed this Court's

judgment.  *Id.*; Doc. No. 62.  On November 26, 2007, the United States Supreme Court denied petitioner's petition for a writ of *certiorari.*  Doc. No. 65.

On October 20, 2008, petitioner filed the instant *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255.  He asserts as follows:

> 1.  Ineffective assistance of counsel.  The plea agreement was unknowingly and involuntarily entered because counsel used fear, force, and fraud to coerce Defendant and therein deny his rights.
>
> 2.  Mr. Jackson was denied effective assistance of counsel because Hobson refuse[d] to investigate or interview witnesses in preparation for trial.
>
> 3.  Mr. Jackson was denied effective assistance of counsel when Hobson actually and constructively denied Mr. Jackson counsel altogether.

It is the position of the respondent that petitioner's claims are procedurally defaulted or without merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner asserts that his guilty plea was not knowing, intelligent or voluntary, and that he was denied the effective assistance of counsel because his attorney used fear to coerce his guilty plea.  Petitioner alleges that Attorney Hobson advised him he would be found guilty based on his race and because white rural people from southern Ohio would be seated as jurors.  *See Memorandum in Support.*  Petitioner further alleges that Attorney Hobson used fraud to induce petitioner's guilty plea, misstating facts about the nature of jurors, the court, sentencing, evidence, and the law.  Petitioner complains that Attorney

Hobson refused file a motion to withdraw his guilty plea and improperly "abandoned" representation of petitioner at that time. *See id.* He further alleges that Attorney Hobson failed to advise him of the elements of offenses charged and refused to investigate or interview child care center employees and other potential defense witnesses. Additionally, petitioner asserts that Attorney Hobson denied him the assistance of counsel in proceedings involving his motion to withdraw his guilty plea *See id.*

In support of these claims, petitioner has submitted his own affidavit in which he indicates that he repeatedly told Attorney Hobson he was not guilty and wanted a jury trial, but Attorney Hobson repeatedly advised him against proceeding to trial. According to petitioner, he used the firearm at issue solely for self defense and because the Westside Child Care Center is located in a violent neighborhood with high drug activity. Petitioner told police he carried the package containing the firearm into the day care center, and complains that defense counsel advised him he would be found guilty of possession of the firearm regardless of whether that package had been sealed. Petitioner asked Attorney Hobson to interview day care workers and anyone else who had access to the basement of the daycare center, but counsel refused to do so. According to petitioner, defense counsel advised him that he would likely be found guilty at trial because petitioner is African American, the day care workers were white, and petitioner would be tried by "a white jury out of a small rural town in southeastern Ohio who were racist." *See Affidavit of Kenyatta Jackson.* Attorney Hobson further advised petitioner he faced sixty or more years imprisonment if he proceeded to trial and could be sentenced to forty years on each count,

such sentences to be served consecutively.  Petitioner contends that "Hobson coerced me

with fear of a racially biased jury that would convict me regardless of the truth."  *See id.*

He states that Attorney Hobson "refused to give [him] any information" regarding the

charges against him and refused to prepare for trial.  Attorney Hobson  refused to appeal

the denial of his motion to suppress evidence and refused to advise petitioner about the

government's burden of proof at a trial.  Attorney Hobson told petitioner that if he did not

plead guilty on the day of his guilty plea, he would be sentenced more harsh-ly because

he had not accepted responsibility for his crime.  Attorney Hobson advised petitioner that

"the judge was very conservative and a tough sentencer."  *See id.*   Petitioner entered a

guilty plea because he felt he had no choice.  After doing so, he learned about the elements

of the charges against him and the government's burden of proof.  He then asked Attorney

Hobson to file a motion to withdraw the guilty plea but counsel refused and walked out.

Attorney Hobson made him fearful of proceeding to trial "by inflating the sentence range"

and "lying about the jury selection," the right to appeal the denial of his motion to suppress

evidence, and the government's burden of proof.  *See Affidavit of Kenyatta Jackson.*

It is the position of the respondent that petitioner's claims are procedurally

defaulted or without merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent preliminarily contends that petitioner is barred from raising a claim

regarding the involuntary nature of his guilty plea in these proceedings because he failed

to raise this claim on direct appeal where he challenged the District Court's denial of his

motion to withdraw his guilty plea on the basis that the Court erred in instructing him on the elements of his §924(c) conviction during the guilty plea colloquy. *Return of Writ*, at 13; *see United States v. Jackson, supra.*

However, petitioner asserts in this §2255 petition that his guilty plea was involuntary due to the ineffective assistance of counsel. This claim is properly considered in these habeas corpus proceedings. *Spearman v. United States*, 43 Fed.Appx. 906, unpublished, 2002 WL 1832743 (6th Cir. August 8, 2002), citing *United States v. Tucker*, 90 F.3d 1133, 1143 (6th Cir. 1996). Further, petitioner did not raise this same claim in his motion to withdraw guilty plea, *see Transcript, Motion to Withdraw Guilty Plea*, April 6, 2006, at 30-31,[1] or on direct appeal. Therefore, this Court is not precluded from considering his

---

[1] At the hearing on petitioner's motion to withdraw guilty plea, the Court inquired:

> Ms. Menashe, you are not arguing now, are you, that the plea was involuntary, the plea, the guilty pleas?

> MS. MENASHE: I'm not arguing that, Your Honor.

> * * *

> In essence, I am arguing that... on February 1st of 2006, Mr. Jackson did not have a full and complete understanding of the law as it relates to the elements of each count contained in that indictment.

> COURT: Despite the fact that I read the elements to him?

> MS. MENASHE: Yes, Your Honor.

> * * *

> COURT: You're not arguing that he was coerced into the –

claim(s) here. *Arana v. United States*, 2009 WL 454700 (E.D. Michigan February 24, 2009), citing *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir.1996)(other citations omitted).

Because a criminal defendant waives numerous constitutional rights when he pleads guilty, the plea must be entered into knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). " 'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir.1988) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, the Court must look at the totality of circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan,* 426 U.S. 637, 648 (1976). Further, A criminal defendant cannot successfully challenge the voluntariness of his plea merely on the basis that he was motivated to plead guilty. *Brady v. United States,* 397 U.S. 742, 750 (1970).

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The two part test announced in *Strickland v. Washington,* 466 U.S. 668, 687 (1984), applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *Sparks v. Sowders,* 852 F.2d 882, 884 (6th Cir.1988). In order to obtain relief, a prisoner raising such a claim must first show

---

MS. MENASHE: That's correct, Your Honor.

*Transcript, Motion to Withdraw Guilty Plea*, April 6, 2006, at 30-31.

that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884. Petitioner has failed to meet this standard here.

On February 1, 2006, petitioner signed a guilty plea agreement indicating in relevant part that he would plead guilty to possession with intent to distribute over 5 grams of cocaine base and possession of a firearm in furtherance of a drug trafficking crime. *See* Doc No. 37. He indicated that he understood the penalties he faced, including a minimum term of five years imprisonment on each count, such sentences to be served consecutively to each other. *See id.* The government agreed not to file any additional charges against petitioner based on his activities charged in the indictment or other narcotics violations occurring prior to the date of the indictment. *See id.* The parties agreed that, for sentencing purposes, his relevant conduct under U.S.S.G. §2D1.1 and §1B1.3 was 11.1 grams of cocaine base. If petitioner continued to accept responsibility for the offenses charged, the government would made a motion stating that he had timely notified the authorities of his intention to plead guilty. Petitioner was aware that the District Court could impose any sentence within the statutory maximum, and that any estimate of a probable sentencing range was not a promise and not binding. Petitioner indicated that

no additional promises, agreements or conditions had been made other than those expressly set forth in his guilty plea agreement. *Id.*

At the time of petitioner's guilty plea, petitioner indicated that he understood the nature and meaning of the charges against him. *Guilty Plea Transcript*, at 5. He had discussed the charges with his attorney, and believed his attorney was fully informed about the facts and circumstances on which the charges were based. *Id.*, at 6. Defense counsel had fully advised him on the nature and meaning of the charges as well as any defenses, and he was satisfied with his attorney's advice and representation. *Id.* The District Court advised petitioner of the elements of the charges against him as well as the maximum penalties that he faced, including that he faced a mandatory five year consecutive term of incarceration on each count, or a ten year minimum term of incarceration. *Id.*, at 6-9. Petitioner at all times indicated that he understood. He understood that the Court could impose the maximum penalties. *Id.*, at 9. He understood that the United States Sentencing Guidelines were advisory and had discussed with his attorney how those guidelines might apply in his case. *Id.*, at 12. He understood that the Court could impose a sentence more or less severe than that recommended under the guidelines, and that if he was sentenced more harshly than he anticipated he would remain bound by his guilty plea and would not have the right to withdraw his guilty plea. *Id.*, at 12-13. The District Court advised petitioner of all of the rights he was waiving by entering a guilty plea. Petitioner at all times indicated that he understood. *Id.*, at 13-15. The prosecutor stated the terms of petitioner's plea agreement, and petitioner agreed with those terms. *Id.*, at 15-19. He

denied that anyone had made any other promises or assurances of any kind to induce his guilty plea. *Id.,* at 19. He understood that any recommendation of sentence was not binding on the Court. *Id.,* at 20. He denied that anyone had promised or suggested to him that he would receive a lighter sentence or any other form of leniency if he pleaded guilty. *Id.,* at 20.

> COURT: Is your decision to plead guilty your own free and voluntary act?
>
> JACKSON: Yes.
>
> COURT: Have you been subjected to any threats or force of any kind which caused you to plead guilty ?
>
> JACKSON: No.

*Id.,* at 20-21. Special Agent Dallas summarized the facts as follows:

> On June 3, 2005, CPD officers were dispatched to the Westside Child Care Center on 40 North Grubb Street, Columbus, Ohio, on a report of a man with a gun inside the building. Upon arrival at the day care, one of the day care workers explained to the officers that Kenyatta Jackson brought a box into the school. Mr. Jackson asked the day care worker to put the box where no children or workers could open it. The day care worker took the box and observed a handgun inside the box. Mr. Jackson then asked for the box, and the day care worker handed it to Mr. Jackson. The day care worker then called police.
>
> Officers observed Mr. Jackson exit the day care and begin to run southbound from the day care. Mr. Jackson was apprehended.
>
> Officers continued to investigate the scene and located a firearm underneath a stack of folding chairs in the basement next to a stairwell. The firearm was further described as a

> Lorcin Model L-380, bearing Serial Number 050465. The firearm was loaded with one round in the chamber and six in the magazine.
>
> Upon further investigation, other day care employees observed Mr. Jackson standing near a stack of cots. Officers recovered a baggie of suspect crack cocaine from the area of the cots. The suspect narcotics were analyzed by the CPD lab and found to be 11 grams of crack cocaine, a Schedule II narcotic.

*Id.*, at 21-22. Petitioner agreed with those facts. *Id.*, at 22-23. He indicated that he was pleading guilty because he was guilty of the offenses charged. *Id.*, at 23. He admitted his guilt. *Id.*

On March 16, 2006, the Court conducted a hearing two days after receiving a letter from petitioner indicating that he wanted to withdraw his guilty plea. *Transcript*, March 16, 2006. Petitioner stated that he wanted to withdraw his guilty plea based upon:

> Misinformation from my attorney, I believe flat-out lies by my attorney, in order to get me to plead to this case, lack of not willing to fight for me, and also information that came available to me after I pleaded that went to the heart of the defense that I had on both charges.

*Id.*, at 3. The Court granted Attorney Hobson's request to withdraw, and appointed Diane Menashe per petitioner's request. *Id.*, at 8. Attorney Menashe filed a motion to withdraw guilty plea, and a response to the government's opposition to her motion. Doc. Nos. 44, 48. At the April 6, 2006, hearing on petitioner's motion, Attorney Menashe argued on petitioner's behalf that, on March 3, 2006, there had been a "complete breakdown in communication" between petitioner and Attorney Hobson, and petitioner had not had a "full and complete understanding of the law" as it related to the charges against him at the

time of his guilty plea. *Transcript,* April 6, 2006, at 4-5, 31. On April 12, 2006, the Court

denied petitioner's motion to withdraw his guilty plea. Doc. No. 49.

Shook's representations to the Court that he understood the charges against him,

was advised by his counsel of the nature and meaning of those charges, and his admission

of his guilt carries great weight in resolution of the claims he makes here:

> [T]he representations of the defendant, his lawyer, and the
> prosecutor at [the guilty plea hearing], as well as any findings
> made by the judge accepting the plea, constitute a formidable
> barrier in any subsequent collateral proceedings. Solemn
> declarations in open court carry a strong presumption of
> verity. The subsequent presentation of conclusory allegations
> unsupported by specifics is subject to summary dismissal, as
> are contentions that in the face of the record are wholly
> incredible. *Machibroda, supra,* 368 U.S. at 495-496, 82 S.Ct., at
> 514 (s 2255); *Price v. Johnston, supra,* at 334 U.S. 266, 286-287, 68
> S.Ct. 1049, 1060-1061, 92 L.Ed. 1356 (s 2243).

*Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977). A criminal defendant cannot successfully

challenge the voluntariness of his plea merely on the basis that he was motivated to plead

guilty. *Brady v. United States,*397 U.S. 742, 750 (1970).

Thus, petitioner denied, at the time he entered his guilty plea, that he had been

forced or coerced into entering his guilty plea. At all times he indicated that he understood

the nature of the charges against him and the sentencing ramifications. He was satisfied

with his attorney and indicated that he had reviewed the case with counsel. He articulated

no questions or concerns.

This Court must indulge a strong presumption that statements made by the parties

at the plea hearing were truthful. *Blackledge v. Allison,* 431 U.S. 63, 74, 76 (1977).

> [T]he representations of the defendant, [her] lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are con-tentions that in the face of the record are wholly incredible.

*Id.* In view of the record before this Court, petitioner's unsupported allegation in these proceedings that his guilty plea was coerced and not knowing or intelligent; that he did not understand the government's burden of proof, or the elements of the offenses against him; and that did not want to enter a guilty plea, but was forced to do so by counsel's refusal to prepare for trial or the misrepresentations of counsel simply are not worthy of credit. *See Id.* at 74. In view of the record, petitioner simply has failed to establish that, but for the inadequate performance of defense counsel, he would not have pleaded guilty but would instead have proceeded to trial. *See Hill v. Lockhart, supra.*

The Court notes that, by entry of his guilty plea, petitioner obtained a two level reduction in his recommended sentence under the United States Sentencing Guidelines for his acceptance of responsibility and a one level reduction for timely notifying the authorities of his intent to plead guilty, thereby reducing his potential prison exposure. *PreSentence Investigation Report*, at ¶¶35, 36. Additionally, the government agreed not to file any additional charges against petitioner based on his activities charged in the indictment or other narcotics violations occurring prior to the date of the indictment as to which petitioner may provide statements. *See Plea Agreement*, Doc. No. 37. The District Court

sentenced petitioner to the mandatory minimum sentence required for his offenses of conviction. *See* Doc. Nos. 51, 52. The fact that defense counsel may have advised petitioner that the evidence against him was strong, or recommended that he enter a guilty plea, in view of the facts of this case, did not constitute the ineffective assistance of counsel. Further, petitioner's statement that he carried the firearm which he brought into the day care center for his protection, or that an employee of the day care opened the box against his instructions, did not absolve him of the criminal liability. As discussed, evidence reflects that petitioner carried the firearm into the basement of the day care center, put it under a stack of folding chairs, and was seen hiding what turned out to be a clear bag of cocaine under some cots. *See Probable Cause Affidavit; Transcript, Motion to Suppress Hearing,* January 4, 2006. Thereafter, after properly being advised by police of his rights under *Miranda v. Arizona*, 384 U.S. 477 (1966), petitioner told police that he carried the firearm for his protection and had "put the firearm in the box because he didn't think any of the employees would look in his property." *See id.* He admitted buying the crack cocaine earlier that day. He told police he did not "sell large quantities [of cocaine], but only small quantities to addicts, commonly referred to as 'geeks.'" *See Probable Cause Affidavit; Transcript, Motion to Suppress Hearing*, January 4, 2006, at 80. Petitioner also told police he was interested in cooperating with the government, as he was familiar with the narcotics trade, and offered them the name of his supplier. *Transcript, Motion to Suppress Hearing,* at 80-81. From all of these facts, it was not unreasonable to conclude that a jury would have found petitioner was guilty of the offenses charged. *See United States v. Mackey*, 265 F.3d

467, 460-462 (6th Cir. 2001).[2]

In *United States v. Mackey, supra*, the United States Court of Appeals for the Sixth Circuit held:

> The term "furtherance" should be understood in its ordinary or natural meaning, which, according to the dictionary, is "a helping forward: advancement, promotion." Webster's Third New International Dictionary (1981). In other words, the weapon must promote or facilitate the crime.
>
> . . . The Supreme Court [has] held that "use" require[s] some active employment. *Bailey,* 516 U.S. at 144, 116 S.Ct. 501.
>
> * * *
>
> . . . The government must clearly show that a firearm was possessed to advance or promote the commission of the underlying offense. The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis for imposing this particular mandatory sentence. Rather, the government must illustrate through specific facts, which tie the defendant to the firearm, that the firearm was possessed to advance or promote the criminal activity.
>
> H.R.Rep. No. 105-344 (1997), 1997 WL 668339, at *11-12 (footnotes omitted). *See also United States v. Iiland,* 254 F.3d 1264, 1274 (10th Cir.2001) (explaining that "in furtherance of" is a higher standard than "during and in relation to").
>
> * * *
>
> By requiring that the possession be "in furtherance of" the crime, Congress intended a specific nexus between the gun and the crime charged. *See United States v. Finley,* 245 F.3d 199, 203 (2d Cir.2001) ("the requirement in §924(c)(1) that the gun be possessed in furtherance of a drug crime may be satisfied by a showing of some nexus between the firearm and the drug selling operation" (citation omitted)).
>
> * * *
>
> In order for the possession to be in furtherance of a drug crime, the firearm must be strategically located so that it is quickly and easily available for use.

15

Petitioner has failed to identify any witnesses who would have provided exculpatory evidence on his behalf such that he was prejudiced by defense counsel's alleged failure to investigate.

He likewise has failed to establish a claim of ineffective assistance of counsel based on his attorney's failure to preserve for appeal a claim that the District Court improperly denied his motion to suppress his statements to police.

> An ineffective assistance of counsel claim under the Sixth Amendment may be asserted by a habeas petitioner for coun-sel's failure to file a motion to suppress evidence excludable

*See United States v. Feliz-Cordero,* 859 F.2d 250, 254 (2d Cir.1988) (stating that a gun in a dresser drawer with drugs in the bed-room did not constitute "use" under § 924 because the evidence was insufficient to show the gun was "strategically located so as to be quickly and easily available for use during such a transaction"), *overruled by Bailey,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472. Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of the crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found. *See United States v. Ceballos-Torres,* 218 F.3d 409, 414-15 (5th Cir.2000) (suggesting con-sideration of these factors to determine possession in furtherance of a drug crime). The list of factors is not exclusive, but it helps to distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard.

*Id.* Here, petitioner possessed a loaded firearm that was easily accessible to him and cocaine, stating that he used the firearm for protection, that he sold drugs, and he had bought the drugs earlier that morning. A reasonable jury could have inferred that the purpose of the firearm "was to prove defense or deterrence in furtherance of the drug trafficking." *See id.,* at 462-463.

16

under the Fourth Amendment. *Kimmelman v. Morrison*, 477
U.S. 365, 382-83 (1986). A two-prong test applies. First, the peti-
tioner must show a meritorious Fourth Amendment challenge
that a reasonable attorney would have brought. *Northrop v.
Trippett*, 265 F.3d 372, 383-84 (6th Cir.2001). Second, he must
show a reasonable probability that the verdict would have
been different but for the admitted evidence. *Northrop v. Trip-
pett,* 265 F.3d 372, 384 (6th Cir.2001).

*United States v. Vershish*, 2002 WL 31996128 (W.D. Tenn. December 10, 2002).

Here, the record does not indicate he had any reasonable probability of succeeding
on such a claim on direct appeal. *See id.; Transcript, Hearing on Motion to Suppress Evidence,*
January 4, 2006; *Order, granting in part and denying in part Defendant's Motion to Suppress,*
Doc. No. 32.

Petitioner's claim that Attorney Hobson deprived him of counsel in proceedings on
his motion to withdraw guilty plea, or performed in a constitutionally ineffective manner
by refusing to file the motion on his behalf also fails to warrant federal habeas corpus relief.
The District Court appointed  Attorney Menashe, to represent petitioner after Attorney
Hobson withdrew from representing petitioner on March 16, 2006.  She represented
petitioner in proceedings on his motion to withdraw his guilty plea, so he was not denied
counsel in those proceedings.  *See* Doc. Nos. 44, 48, 58.  She represented to the Court that,
after petitioner's guilty plea, in meetings with Attorney Hobson that took place on
February 28, 2006, and March 3, 2006, when petitioner expressed his intention to withdraw
his guilty pleas, there occurred a "complete breakdown in communication" between
petitioner and defense counsel. *Hearing on Motion to Withdraw Guilty Plea*, April 6, 2006, at

4-6. Thereafter, on March 13, 2006, petitioner wrote the Court that he wanted to withdraw his guilty pleas. *Id.*, at 6. After a hearing, the District Court denied petitioner's motion to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B), for failure to "show a fair and just reason for requesting the withdrawal." *Id.* The United States Court of Appeals for the Sixth Circuit affirmed this Court's decision:

> We review a "district court's denial of a motion to withdraw a guilty plea for abuse of discretion." *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir.2007) (citing *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir.1998)). After the district court accepts the plea, a defendant may withdraw that plea before he is sentenced only if he "can show a fair and just reason for requesting the withdrawal." Fed.R.Crim.P. 11(d)(2)(B); *see United States v. Quinlan*, 473 F.3d 273, 276 (6th Cir.2007). Jackson bears the "burden to demonstrate that proper grounds exist for the granting of such a motion." *Dixon*, 479 F.3d at 436 (citing *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir.1987)).
>
> We look to seven factors when deciding whether a defendant can provide a "fair and just" reason for withdrawing his plea:
>
> (1) the amount of time that elapsed between the plea and the motion to withdraw it;
>
> (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;
>
> (3) whether the defendant has asserted or maintained his innocence;
>
> (4) the circumstances underlying the entry of the guilty plea;
>
> (5) the defendant's nature and background;
>
> (6) the degree to which the defendant has had prior experience with the criminal justice system; and

(7) potential prejudice to the government if the motion to withdraw is granted. *Dixon*, 479 F.3d at 436 (quoting *Pluta*, 144 F.3d at 973); *accord Quinlan*, 473 F.3d at 276-77; *United States v. Ellis*, 470 F.3d 275, 281 (6th Cir.2006); *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir.1994). Although the district court used a five-factor test, *see, e.g.*, *United States v. Riascos-Suarez*, 73 F.3d 616, 621 (6th Cir.1996), the two tests are virtually identical, and we will apply the seven-factor test set forth above.

Jackson's primary reason for asking the court to allow him to withdraw his plea is rooted in the fourth factor-circumstances underlying the plea. He argues that the district court erred by misstating the § 924(c) elements during the plea colloquy when it explained, "Count 2, the charge of possession of a fire-arm in furtherance of a drug trafficking crime, the elements are as follows: first that you knowingly possessed a firearm, and, second, the possession was in furtherance of or was possessed to aid in the commission of a drug trafficking crime...."

Section 924(c) prohibits using a firearm in furtherance of a drug trafficking crime or carrying a firearm during and in relation to a drug trafficking offense. *United States v. Combs*, 369 F.3d 925, 932 (6th Cir.2004). Jackson argues that the district court's adding of the phrase "aid in the commission of" erroneously described the §924(c) elements. The government counters that the phrase merely defines "in furtherance of." We have interpreted "in furtherance of" to require a specific nexus between the gun and the crime charged. *See, e.g.*, *Combs,* 369 F.3d at 933; *United States v. Mackey,* 265 F.3d 457, 462 (6th Cir.2001). The gun must advance, promote, or facilitate the crime. *See Mackey,* 265 F.3d at 461; *United States v. Paige,* 470 F.3d 603, 609 (6th Cir.2006). While §924(c) does not read as the district court said, there seems little light between "aid" and "furtherance" in this context, and any error strikes us as minor.

Jackson does not allege any specific confusion as a result of the district court's technical misstatement of the §924(c) ele-ments. He does not explain what he thought "aid" meant and how that might be different than "furtherance," and, even as-suming the district court's recitation of the §924(c) elements actually confused him, why he would have pleaded guilty to

possessing a gun to aid the commission of a drug offense but not to possessing a gun to further a drug offense.

Nor should the district court's misstatement be examined in a vacuum. The indictment alleged that Jackson "did knowingly possess a firearm ... in furtherance of a drug trafficking crime." During the plea colloquy, the district court asked Jackson whether he had been furnished with the indictment, whether he understood the nature and meaning of the crimes, whether he discussed the crimes with his attorney, and whether his attorney fully advised him of the nature and meaning of the crimes. Jackson answered "yes" to each of these questions. He also admitted the factual basis of the §924(c) charge. Furthermore, in his plea agreement, Jackson agreed in writing to plead guilty to "possession of a firearm in furtherance of a drug trafficking crime."

Although we agree with Jackson that the district court should not have inserted the language "to aid in the commission of," his task is to provide us a reason to allow him to withdraw his plea. We recognize the possibility of a district court so misstating the elements of a crime that a defendant could rightly complain that he did not know to which offense he was pleading guilty. *See United States v. Gandia-Maysonet,* 227 F.3d 1, 3-5 (1st Cir.2000) (allowing a defendant to withdraw his plea where the trial court repeatedly misstated the scienter element). The misstatement here was far less serious than the one in *Gandia,* and Jackson has not shown how the district court's alleged error actually prejudiced him.[FN1] Simply put, the circumstances underlying the plea do not warrant allowing Jackson to withdraw it.

FN1. In his brief, Jackson mentioned Rule 11(b)(1)(G) (requiring district courts to explain "the nature of each charge to which the defendant is pleading"), although he requested only that he be allowed to withdraw his plea under Rule 11(d)(2)(B). At oral argument, Jackson's counsel relied primarily on Rule 11(b)(1)(G) and suggested relief under that section would be appropriate as well. A defendant may request that an appellate court vacate a guilty plea for failure to comply with Rule 11(b). Jackson has not argued for such relief

except cursorily. *See Meridia Prods. Liability. Litig. v. Abbott Labs.,* 447 F.3d 861, 868 (6th Cir.2006) (declining to consider an inadequately developed argument). That said, because Jackson failed to object contemporaneously, we would review for plain error. *United States v. McCreary-Redd,* 475 F.3d 718, 721 (6th Cir.2007). And given that we find no prejudice, any Rule 11(b)(1)(G) error would not permit us to vacate Jackson's plea.

The amount of time between Jackson's entry of the plea and his motion to withdraw-forty days-also militates against allowing withdrawal. Generally, the shorter a defendant's delay between entering a plea and moving to withdraw it, the more favorably disposed the court is to withdrawal. Converse-ly, "a defendant's reasons for [moving to withdraw a plea] will be more closely scrutinized when he has delayed his motion for a substantial length of time." *Ellis,* 470 F.3d at 281 (quoting *United States v. Baez,* 87 F.3d 805, 808 (6th Cir.1996)). Numerous decisions of this court have found that delays on the order of forty days weigh against granting the motion to withdraw. *See, e.g., United States v. Valdez,* 362 F.3d 903, 912 (6th Cir.2004) (seventy-five days); *United States v. Durham,* 178 F.3d 796, 798-99 (6th Cir.1999) (seventy-seven days); *Baez,* 87 F.3d at 808 (sixty-seven days); *Bashara,* 27 F.3d at 1181 (forty-six days); *United States v. Goldberg,* 862 F.2d 101, 104 (6th Cir.1988) (fifty-five days); *United States v. Spencer,* 836 F.2d 236, 239 (6th Cir.1987) (thirty-six days).

None of the other *Dixon* factors supports allowing Jackson to withdraw his plea. Other than a generalized complaint about his counsel, Jackson offers no specific reason why he failed to withdraw his plea earlier. Furthermore, we will not read Jackson's not-guilty plea as an assertion of innocence within the meaning of the third factor. Finally, we note that Jackson's lack of formal education is not a reason to excuse a guilty plea, especially considering his veteran status with the criminal justice system. And given that the first six factors weigh against allowing Jackson to withdraw his plea, we need not consider the seventh factor-prejudice to the government. *See United States v. Lineback,* 330 F.3d 441, 445 (6th Cir.2003) (Gilman, J., concurring) ("[W]here a defendant fails to show [a reason for withdrawing his plea], the court need not consider

> ... whether the withdrawal would prejudice the government."
> (citing *United States v. Alexander,* 948 F.2d 1002, 1004 (6th
> Cir.1991))).
>
> Jackson bears the burden to show a fair and just reason that
> would entitle him to withdraw his guilty plea under Rule
> 11(d)(2)(B). We agree with the district court's exercise of dis-
> cretion here in finding Jackson failed to carry his burden.

*United States v. Jackson, supra,* 238 Fed.Appx. At 46-49.

As discussed by the United States Court of Appeals, the length of time between petitioner's February 1, 2006, guilty plea, and his March 13, 2006, letter requesting to withdraw his guilty plea was but one of the factors considered in concluding that petitioner had failed to demonstrate a fair and just reason to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d). "[N]one of the other factors" supported his request. *See id.; Opinion and Order,* April 12, 2006, Doc. No. 49. Therefore, even assuming Attorney Hobson had filed a motion to withdraw guilty plea on petitioner's behalf on March 3, 2006, which would have been thirty days after entry of his guilty plea, the record does not indicate a basis for the granting of his motion. Therefore petitioner has failed to establish prejudice under *Strickland*.

In sum, the record fails to support any of petitioner's claims of ineffective assistance of counsel. Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** Petitioner's request for an evidentiary hearing is **DENIED.**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections

to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985);*United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adversedecision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel
United States Magistrate Judge
